## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PENNY J. SMITH** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Case No. CIV-20-1035-STE** |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.**[1] | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) concluded that Plaintiff was disabled beginning October 18, 2018, but not prior to that time. (TR. 6-18). The Appeals Council (AC) granted Plaintiff's request for review, adopting and incorporating the ALJ's findings, with one change—the AC deemed Plaintiff's disability onset date to be December 31, 2018. (TR. 33-36). Thus, the decision of the AC became the final decision of the Commissioner for purposes of federal district court review. *See* 20 CFR § 404.981 (noting that when the AC grants review of a claim, the AC's decision is considered the Commissioner's "final decision" for purposes of federal district court review); *see also* 42 U.S.C. § 405(g) (providing that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action" in federal district court.).[2]

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R.

---

[2] In its review of the Commissioner's "final decision," the Court will review the AC's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the Commissioner applied the correct legal standard. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). However, to the extent the AC adopted, agreed with, or otherwise relied upon the ALJ's decision, the Court will include those evaluations and explanations in its review and any referral to the ALJ or his findings will also refer to findings from the AC to the extent no conflict exists and unless specified otherwise.

§ 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2017, the alleged onset date. (TR. 9). At step two, the ALJ determined Ms. Smith suffered from the following severe impairments: spine disorder; diabetes mellitus; obesity; sleep-related breathing disorder; bilateral thumb trapeziometacarpal joint arthritis with status post left thumb TM resection arthroplasty; depression; anxiety; and headaches. (TR. 9, 35). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 9).

At step four, the ALJ concluded that Ms. Smith retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except her ability to perform the full range of light work is diminished by additional nonexertional limitations. She can frequently handle and finger bilaterally. She can perform "simple tasks of 1-2 steps" with routine supervision; "simple tasks of 1-2 steps" means unskilled, entry-level work with an SVP of one or two. She can interact appropriately with coworkers and supervisors. She can interact appropriately with the general public on an occasional basis. She can adapt to a work setting and some forewarned changes in a usually stable work setting (in the context of unskilled entry-level work with an SVP of one or two). The claimant is limited to performing jobs with a Dictionary of Occupational Titles (DOT) General Education Development Reasoning Level of one and two.

(TR. 11-12, 35).

With this RFC, the ALJ concluded that Ms. Smith could not perform her past relevant work. (TR. 15). Thus, the ALJ presented the RFC limitations to a vocational

expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 114-117). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 118-119). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Smith was not disabled prior to October 18, 2018 based on her ability to perform the identified jobs. (TR. 17). However, because Plaintiff's "age category" changed from "closely approaching advanced age" to "advanced age,"[3] the ALJ concluded that beginning October 18, 2018, Ms. Smith became disabled based on the application of Medical-Vocational Rule 202.06.[4]

## III.   ISSUES PRESENTED

On appeal, Ms. Smith alleges: (1) the ALJ erred in evaluating Plaintiff's need for an assistive device; (2) the ALJ erred in evaluating Plaintiff's allegations of pain and the consistency of her statements; (3) the ALJ erred in evaluating Plaintiff's mental health; (4) the ALJ erred in evaluating Plaintiff's shoulder impairment; and (5) a lack of substantial evidence to support the RFC regarding Plaintiff's ability to use her hands. (ECF Nos. 17:4-15; 24:3-10).

---

[3]  The Commissioner has established three age categories: younger person (under age fifty), person approaching advanced age (age fifty to fifty-four), and person of advanced age (age fifty-five and over). *See* 20 C.F.R. § 404.1563.

[4] As stated, the AC found that Ms. Smith was disabled beginning December 31, 2018 based on application of Rule 202.06. *See supra*.

## IV.    STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    ERROR IN THE ALJ'S EVALUATION OF PLAINTFF'S CANE USE

Plaintiff alleges that the ALJ failed to properly consider her use of a cane and/or walker and the potential effects on her RFC. (ECF Nos. 17:5-6; 24:8). In particular, Plaintiff contends the ALJ failed to "even minimally examine the records" with respect to Plaintiff's cane use, but "instead only conclusively state[d] Claimant's cane was not prescribed." (ECF No. 17:6). The Court agrees and finds error in the ALJ's evaluation.

**A.      Evidence Regarding Plaintiff's Cane Use**

At the administrative hearing, Plaintiff testified that in 2009, a physician prescribed a cane to aid her balance, because her gait "[wa]s going to cause problems" which would "get worse." (TR. 72).[5] According to Plaintiff, she: (1) was told to use the cane indefinitely while walking and (2) she used the cane every time she went out. (TR. 73). Plaintiff also testified that she sometimes used a walker to ambulate long distances. (TR. 74). Medical evidence from Plaintiff's physical therapist on January 17, 2017 noted that Ms. Smith "us[ed] a regular cane for walking/balance." (TR. 487, 1384). In addition, several other medical practitioners noted Plaintiff's cane use and abnormal gait. *See* TR. 682 (noting Plaintiff's "slowed" gait and use of a cane); TR. 686 (noting Plaintiff's "slowed" gait and use of a walker); TR. 858, 1124 (noting that Plaintiff "ambulates with the use of a cane and with antalgic gait."); TR. 462 (noting "on ambulation, [Plaintiff] has an unusual gait, appearing to limp on her left leg."); TR. 552, 608, 1604 (noting Plaintiff's cane use).

**B.      Error in the ALJ's Consideration of Plaintiff's Cane Use**

Social Security Ruling 96-9p provides that assistive devices such as canes and walkers will be found medically necessary when there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at

---

[5] In a disability function report, Plaintiff also stated that she was prescribed a walker and cane by a physician. (TR. 391).

*7 (July 2, 1996). Furthermore, a prescription is not required for a hand-held assistive device to be medically necessary, only "medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191 n. 1 (10th Cir. 2009).

In the administrative decision, the ALJ mentions Plaintiff's cane use once, stating: "Ms. Smith testified that she uses a cane for assistance when she goes out, but she acknowledged it is not medically prescribed." (TR. 12). The ALJ does not further discuss Plaintiff's cane use or its potential effect on the RFC or Plaintiff's ability to work, and for two reasons, the omissions constitute error.

First, the ALJ incorrectly stated that Plaintiff "acknowledged [the cane] [was] not medically prescribed." (TR. 12). At the hearing, Ms. Smith clearly testified that Dr. Gaylon Yates prescribed the cane in 2009. (TR. 71). "The ALJ is not required to accept Plaintiff's testimony about her walker prescription at face value, but at a minimum the ALJ must explain why he rejected that testimony." *Thompson v. Berryhill*, No. CIV-17-923-R, 2018 WL 3427652, at *3 (W.D. Okla. July 16, 2018). At the hearing, the ALJ repeatedly asked Plaintiff and her attorney for evidence in the record which documented a medical prescription for the cane. *See* TR. 56-58, 71-73. When neither Plaintiff nor her attorney could locate the actual prescription, the ALJ conceded that "the Commissioner doesn't require a [cane] prescription, [but instead] he requires it to be a medically required handheld assistive device." (TR. 58).[6] Even so, it appears that the ALJ equated Plaintiff's inability to point to a record documenting the prescription as

---

[6] The ALJ is correct. *See* SSR 96-9p, at *7.

her "acknowledgement" that the cane was not medically prescribed. But Plaintiff's testimony indicates otherwise and, as stated, no medical prescription was necessary.

Second, the ALJ erred by failing to discuss whether the cane was "medically required," which he was required to do in light of the fact that the record contained "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, at *7. *See supra* (medical evidence documenting Plaintiff's abnormal gait and cane use for walking and balance); *Wood v. Berryhill*, 2019 WL 470914, at *4 (W.D. Okla. Feb, 16, 2019) (noting that a physician's assistant's observation regarding a plaintiff's "weak gait requiring a cane" consisted a medical opinion regarding the medical necessity of an assistive device); *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (holding that "an ALJ is not required to discuss every piece of evidence," but must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). The ALJ acknowledged Plaintiff's testimony regarding her use of the cane, but seemed to dismiss the need based on a lack of medical prescription without further discussion. *See supra*. As stated, a medical prescription was not necessary, and in light of the medical evidence regarding the "medical necessity of the cane," the ALJ had a duty to discuss the same, especially in light of the SSA's statement that "the occupational base for an individual who must use [an assistive] device for balance because of significant involvement of both lower

extremities (e.g., because of a neurological impairment) may be significantly eroded." SSR 96-9p, at *7.

The Commissioner presents two arguments in an attempt to defend the ALJ's lack of explanation regarding Plaintiff's cane use, but neither argument is persuasive.

First, according to Defendant, the ALJ "need only accommodate the use of an assistive device in the RFC if the claimant can establish that it is 'medically required,'" which, in turn, requires "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, as describing the circumstances for which it is needed." (ECF No. 22:10). Ms. Kijakazi contends that "Plaintiff fails to identify any medical documentation establishing the medical necessity of a cane, much less one that describes the circumstances for which it is needed." (ECF No. 22: 10). On the contrary, however, Ms. Smith cited a plethora of evidence documenting her cane use, including a record which stated that Plaintiff used the cane for walking/balance. *See supra*.

Second, the Commissioner argues that the RFC is supported by substantial evidence based on medical evidence documenting Plaintiff's ability to ambulate without difficulty, and with a "normal gait." (ECF No. 22:8). But the ALJ himself did not rely on this evidence to reject Plaintiff's medically-documented need to use a cane or her related testimony[7] and the Court is not permitted to supply *post hoc* rationales to uphold the Commissioner's decision. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support

---

[7] *See* TR. 17, 19.

the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Ultimately, the Court concludes that the ALJ's failure to explain his treatment of Plaintiff's need for a cane constitutes legal error and remand is warranted. *See supra, Thompson v. Berryhill*, (reversing based on the ALJ's failure to discuss evidence regarding Plaintiff's use of a cane or explain why he had rejected it or had failed to include it in the RFC); *McAnally v. Berryhill*, No. CIV-16-459-M, 2017 WL 4080696, at *3 (W.D. Okla. Aug. 29, 2017), *report and recommendation adopted*, No. CIV-16-459-M, 2017 WL 4079407 (W.D. Okla. Sept. 14, 2017) (recommending reversal because the ALJ failed to address an opinion which stated that the claimant required a cane for walking, an opinion which was "at odds" with the claimant's ability to perform "light" work).

## VI. ERROR IN THE ALJ'S EVALUATION OF PLAINTIFF'S SUBJECTIVE ALLEGATIONS

Ms. Smith alleges that the ALJ erred in considering Plaintiff's allegations of pain and the consistency of her statements. (ECF Nos. 17:8-11, 14-15; 24:8-10). The Court agrees.

### A. ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations, including pain. SSR 16-3p, 2016 WL

1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are]

consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### B.   Plaintiff's Testimony

At the hearing, Ms. Smith testified that she stopped working in 2017 due to pain caused by a syrinx in her spinal cord which could not be surgically treated. (TR. 85-86).[8] When discussing the pain, Plaintiff stated that it started in her neck and "shoots like a shock down [her] arms and through [her] fingers" and "burns very badly" if she sat in one place for twenty minutes or longer. (TR. 87). Plaintiff stated that she took pain medication, but it did not alleviate the pain, but instead, helped only to the extent of allowing her to not stay in bed all day. (TR. 87).

Ms. Smith also testified to residual pain following a 2014 shoulder surgery for a torn labrum and arthritis, for which she currently wears a sling. (TR. 87-88). According to Plaintiff, the pain starts in her upper left arm arm/shoulder area and "sends an electrical charge. . . down [her] arm through [her] fingers" and she suffers "a lot of pain" on the outside of her hand and numbness in two fingers. (TR. 89). Plaintiff stated that she had received injections in her shoulder, which allowed her fingers to move, but did not help her pain. (TR. 88-89).

Plaintiff also testified regarding problems with her thumbs, stating that the pain had become bad enough to warrant surgical intervention in December 2017. (TR. 90).

---

[8] A syrinx is a fluid-filled cavity in the spinal cord which can cause pain and sensory deficits, weakness, and atrophy. *See* https://www.merckmanuals.com/professional/neurologic-disorders/spinal-cord-disorders/syrinx-of-the-spinal-cord-or-brain-stem (last visited Nov. 17, 2021).

Since the surgery, Ms. Smith testified that she can move her left thumb, but scar tissue is forming, which causes pain and swelling. (TR. 91). Plaintiff testified that she still suffers from pain in her left forearm and weakness in her hand which causes difficulty gripping things. (TR. 92).

Ms. Smith testified that on a typical day her pain level is 5-8 out of 10. (TR. 102). Plaintiff also stated that:

- the pain limits her ability to lift more than five pounds and sit for only twenty minutes;

- moving her hands causes shocking pain;

- she can only move her hands (i.e.—on a keyboard) for 15-20 minutes; and

- she suffers from swelling in her right foot which needs to be propped up if she sits for longer than one hour.

(TR. 97-102).

### C. Error in the ALJ's Evaluation of Plaintiff's Subjective Allegations

In formulating the RFC, the ALJ stated that he had considered Ms. Smith's pain and the consistency of her subjective allegations with other evidence of record. (TR. 12). The ALJ then: (1) set forth the two-step framework under SSR 16-3p, (2) summarized a portion of Plaintiff's hearing testimony and some medical evidence, and then stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of

13

> these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 15). By way of explanation, the ALJ stated that he had relied on opinions from State Agency physicians who had found that Plaintiff's statements about her symptoms were only "partially consistent." (TR. 15). In doing so, however, the ALJ failed to:

- discuss Plaintiff's allegations of pain, stating only that she had "discuss[ed] ongoing limitations related to pain" at the hearing; and

- reconcile Plaintiff's complaints of pain with the medical evidence of record documenting the same, which the ALJ himself acknowledged.

(TR. 12-15).[9] Although the ALJ found Ms. Smith's statements "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," the Court cannot perceive from the decision, that the ALJ ever weighed Plaintiff's testimony regarding her pain or explained why he had discounted it, instead relying only on statements from non-examining agency physicians who had reviewed Plaintiff's records at the initial and reconsideration stages of review. *See* TR. 12-15.

The ALJ's recitation of the proper standard and his summary of Plaintiff's testimony is insufficient to fulfill his duties under SSR 16-3p. Although the ALJ summarized a portion of Plaintiff's testimony, he failed to mention her extensive testimony regarding her pain and attempts at treatment, stating only that Ms. Smith

---

[9]   Interestingly, the administrative decision was signed by Douglas S. Stults, "for Edward L. Thompson." (TR. 18). Judge Thompson presided over the administrative hearing, *see* TR. 47, but it appears as though the opinion was signed by Judge Stults. Although the Court presumes that Judge Stults read the hearing transcript and was familiar with the record, it does not appear as though Judge Stults had first-hand knowledge regarding Plaintiff's testimony and demeanor at the hearing.

"discuss[ed] ongoing limitations related to pain." (TR. 12). In addition, the ALJ did not: (1) explain which portions of Plaintiff's testimony he did not believe, or (2) "closely and affirmatively" link any of the factors to his determination. *See* TR. 12-15; *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (explaining that ALJ is required to closely and affirmatively link credibility findings to substantial evidence in the record and to "articulate specific reasons" for such findings).

Although the ALJ relied on findings from State Agency physicians in assessing Plaintiff's subjective allegations, he did not follow the constraints of 20 C.F.R. § 404.1520c in doing so. According to § 404.1520c, when considering a medical opinion, the ALJ must evaluate the opinion's persuasiveness—which is determined primarily by the opinion's supportability and consistency—and the ALJ must explain how he considered those factors. 20 C.F.R. § 1520c(a), (b)(2) & (c)(1)-(2). Here, the ALJ stated that he had considered the State Agency physicians opinions "with the requirements of 20 CFR 404.1520c," but the same is not apparent from the decision which lacks any explanation regarding the opinions' persuasiveness.

In defense of the ALJ's analysis, the Commissioner relies on evidence that Plaintiff reported taking care of animals, doing chores (albeit slowly), walking, driving, shopping, playing games on her phone, and doing photography. (ECF No. 22:13). But the ALJ himself did not rely on this evidence to reject Plaintiff's subjective allegations[10] and the Court is not permitted to supply *post hoc* rationales to uphold the

---

[10]  *See* TR. 12-15.

Commissioner's decision. *See supra.* Furthermore, although activities of daily living is a proper consideration in a consistency analysis, *see* SSR 16-3p, such activities do not clearly contrast with Plaintiff's subjective complaints of pain and related limitations.

In short, the ALJ: (1) failed to mention the full gamut of Plaintiff's testimony regarding her pain and how it affected her; (2) simply summarized evidence, without comment or explanation as to how the evidence was consistent or inconsistent with Plaintiff's claims of pain; and (3) improperly relied only on State Agency physicians' opinions to discount Plaintiff's allegations of pain. Under Tenth Circuit law, these errors warrant remand based on the Court's inability to conduct a meaningful review of the administrative decision. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (reversing and remanding for further explanation of reasons where ALJ examined some objective medical evidence, but failed to address other factors relevant to pain analysis); *Murray v. Berryhill*, No. CIV-15-364-CG, 2017 WL 4010868, at *4-6 (W.D. Okla. Sept. 12, 2017) (reversing and remanding for further proceedings where ALJ provided only narrative description of daily activities and summarized some medical records but "included no meaningful discussion of how the evidence served as a basis for the conclusion"); *Pruitt v. Colvin*, No. CV-15-207-HE, 2016 WL 11469336, at *3 (W.D. Okla. Jan. 20, 2016), report and recommendation *adopted*, No. CIV-15-0207-HE, 2016 WL 1266960 (W.D. Okla. Mar. 31, 2016) (reversing and remanding where ALJ did not deliver the "promised explanation or requisite analysis" in assessing claimant's credibility). As in the above-listed cases, the ALJ's analysis in the instant case lacks

substance and provides no basis for meaningful review of his conclusion. *See Brownrigg*, 688 F. App'x at 545 (although technical perfection is not required, "the substance must be there"). Consequently, remand is warranted.

## VII.   NO ERROR IN THE ALJ'S ANALYSIS OF PLAINTIFF'S MENTAL HEALTH

Contrary to Plaintiff's allegations, the Court finds no error in the ALJ's evaluation of Plaintiff's mental health.

At step two, the ALJ found that Plaintiff suffered from "moderate" limitations in her ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; (4) and adapt or manage herself. (TR. 11). At step four, the ALJ determined that Plaintiff could perform "simple tasks of 1-2 steps with routine supervision" which he defined as "unskilled, entry-level work with a[] [specific vocational preparation level] SVP of one or two." (TR. 11). The ALJ also found that Plaintiff was limited to performing jobs with a "reasoning level" of one or two. (TR. 11-12). At step five, the ALJ found that Ms. Smith was capable of performing the following jobs: (1) housekeeping cleaner, DOT #323.687-014; (2) merchandise marker, DOT #209.587-034; and (3) advertising materials distributor, DOT #230.687-010. (TR. 17). The jobs of housekeeper and advertising materials distributor require a reasoning level of one while the job of merchandise marker requires a reasoning level of two. *See* DOT #323.687-014, #209.587-034; #230.687-010.

On appeal, Plaintiff alleges: (1) the RFC does not adequately account for her "moderate" limitations; (2) the ALJ erred in failing to resolve an apparent conflict

between the RFC and the jobs relied on at step five; and (3) Plaintiff's mental health limitations prevent her from performing any job. The Court finds none of Plaintiff's arguments persuasive.

First, Plaintiff points to evidence that she scored "20" out of "30" on the Montreal Cognitive Assessment test (MoCA) to support her theory that it is "questionable" whether she could "follow through on a two-step task." (ECF No. 17:12). Apparently, Plaintiff believes this evidence undermines the RFC for her ability to perform jobs involving "simple tasks of 1-2 steps." In essence, Ms. Smith is asking the Court to re-weigh the evidence of the MoCA score to conclude that she cannot perform work involving two-step tasks, which the Court cannot do. *See Vigil v. Colvin*, 805 F.3d at 1201 (noting that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

Second, Plaintiff argues that the ALJ failed to reconcile a conflict between the RFC which allowed Ms. Smith to perform jobs involving "simple tasks of 1-2 steps" and the VE's testimony that Plaintiff could perform the job of merchandise marker which required a reasoning level of two. (ECF No. 17:12-13). The Court concludes that any error in this regard would be considered harmless.

The DOT defines six levels of Reasoning Development. Level one provides that the person can "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT Appendix C—Components of the

Definition Trailer, 1991 WL 688702. Level two requires the person to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.*

Ms. Smith contends a conflict existed between the RFC which allowed her to only perform jobs involving "simple tasks of 1-2 steps" and the ALJ's reliance on the VE's testimony that Plaintiff could perform the job of merchandise marker, which requires a reasoning level of two. It is not entirely clear as to whether reasoning level two, which requires "detailed but uninvolved" tasks or instructions, would be similar to "simple tasks of 1-2 steps," and repetitive tasks, or if the tasks which are "detailed but uninvolved" would be more complex. Indeed, reasoning level one appears closest to the ALJ's requirement that Plaintiff be limited to "simple tasks of 1-2 steps." Because the ALJ concluded that Plaintiff could perform the jobs of housekeeper and advertising materials distributor, both of which require only reasoning level one, any error in the ALJ's reliance on the job of merchandise marker would be considered harmless. *See Anderson v. Colvin*, 514 F. App'x 756, 764, 2013 WL 1339379, at *7 (10th Cir. 2013) ("Assuming there was a conflict between the VE's testimony and the DOT, the ALJ's failure to resolve the alleged conflict was harmless error. Even if [plaintiff] was limited to unskilled work that had a Reasoning Development Level of 1, the VE identified at least two such jobs . . . which finding she does not dispute. Thus, the error was

harmless because no reasonable factfinder could have resolved the factual matter any other way.") (citing *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004).

Finally, Plaintiff contends that her "moderate" limitations (as listed above) interfere with "job productivity" which "translates into difficulty maintaining any job." (ECF No. 17:14). In support, Plaintiff cites *Pryce-Dawes v. Barnhart*, 166 F. App'x 348, 350-351 (10th Cir. 2006) and then argues that remand is required because she is unable to perform the job of merchandise marker which requires a reasoning level of two. (ECF No. 17:14). In *Pryce-Dawes*, the Court found that the ALJ failed to discuss evidence from a VE that an individual with "moderate" limitations "certainly could" impact a person's ability to maintain employment. *Pryce-Dawes*, 166 F. App'x at 350. In that case, the Court found error in the ALJ's failure to discuss this portion of the VE's testimony, but in the instant case, no such testimony exists.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings...." *See* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *4 (1996). Here, the ALJ complied with this directive by concluding that Ms. Smith was limited to performing jobs involving "simple tasks of 1-2 steps," an SVP level of 1-2, and a reasoning level of 1-2. *See* TR. 11-12. Unlike the ALJ in *Pryce-Dawes*, the ALJ here did not ignore testimony from the VE which might have undermined the findings at step five. Furthermore, the

Court has already concluded that any error in relying the jobs of merchandise marker was harmless. *See supra*.

In sum, the Court finds no reversible error in the ALJ's assessment of Plaintiff's mental health and subsequent reliance on the VE's testimony at step five.

## VIII. NO ERROR IN THE ALJ'S EVALUATION OF PLAINTIFF'S SHOULDER IMPAIRMENT

Ms. Smith alleges: (1) despite evidence of her shoulder impairment, the ALJ failed to include reaching limitations in the RFC and/or explain the omission and (2) the error was compounded at step five because two of the jobs relied on required "frequent" reaching. (ECF No. 17:7-8). The Court rejects both arguments.

In the decision, the ALJ acknowledged an abundance of evidence concerning Plaintiff's shoulder impairment. (TR. 13-14). For example, the ALJ discussed:

- Plaintiff's arthroscopic surgery on her left shoulder which resulted from acromioclavicular arthritis of the left shoulder, partial thickness tear of subscapularis tendon and supraspinatus tendon of the left shoulder and impingement syndrome on her left shoulder; complaints of right shoulder pain and weakness;

- Shoulder pain which was treated with trigger point injections; and

- A diagnosis of left shoulder rotator cuff impingement tendinopathy.

(TR. 13-14). Ultimately, the ALJ assessed no limitations relating to Plaintiff's shoulder—specifically regarding Ms. Smith's ability to reach. Plaintiff alleges that the omission was error, considering the evidence acknowledged by the ALJ, and that the error was

compounded because two of the jobs relied on at step five require frequent reaching. (ECF No. 17:7-8).

To the extent Plaintiff is asking the Court to re-weigh the evidence to reach a finding contrary to the ALJ's, the Court cannot do, as explained above. *See supra*. However, as discussed, the ALJ may reach a contrary finding regarding Plaintiff's ability to reach following a re-assessment of Ms. Smith's allegations of shoulder pain. *See supra* (discussion regarding remand for a proper analysis of Plaintiff's subjective allegations, including pain). But based on the medical evidence alone, the ALJ did not err in failing to find RFC limitations related to reaching. Plaintiff has only speculated in this regard and pointed to no medical evidence in support of the same, which is fatal to her claim. *See Jimison ex rel. Sims v. Colvin,* 513 F. App'x at 792 (requiring "record support" for a claimed restriction); *Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

Finally, Plaintiff argues that her reaching limitations prevent her from performing two out of the three jobs identified at step five, and that the number of available jobs in the remaining category is insufficient. But the Court rejects this argument because it hinges on a finding already rejected by the Court—that reaching limitations should have been included in the RFC. *See supra*; *See generally, Jimison ex rel. Sims v. Colvin*, 513 F. App'x at 793-94 (concluding there was no error in a hypothetical question where the claimant fails to point to functional limitations that the ALJ improperly omitted).

## IX.    PLAINTIFF'S REMAINING ALLEGATION OF ERROR

Finally, Plaintiff alleges a lack of substantial evidence to support the ALJ's finding that she could "frequently handle and finger bilaterally." (ECF No. 17:6-7). But the Court need not consider this issue in light of the remand to evaluate Plaintiff's need for an assistive device, which could impact her ability to "handle and finger." *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Rivera v. Berryhill*, No. CIV-16-0048 RB/KBM, 242 F.Supp.3d 1226, 1242 (D. N.M. Mar. 16, 2017) ("it would be difficult for Plaintiff to bilaterally handle or finger anything when walking or standing and using his cane.").

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the partially unfavorable portion of the Commissioner's decision.

ENTERED on December 21, 2021.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE